Your Honors, the District Court's denial of Appellant Cuker Interactive's motion to initiate contempt proceedings, we believe committed reversible error for essentially four different reasons. In the underlying litigation, as this Court is aware, the District Court issued a permanent injunction following a trial verdict in favor of Cuker that contained two specific requirements. And I don't think this is in dispute. The injunction clearly required Wal-Mart to stop utilizing Cuker's expressly enumerated trade secret files and it required Wal-Mart to delete those 15 files. And the injunction expressly states those two things and Wal-Mart in their declaration indicated that it understood that there were the two separate elements. And the fundamental mistake that Judge Brooks made here, and I'm up here before this very Court defending Judge Brooks, so I just think it was a mistake on his part. He focused on one of the two elements of the injunction, the deleting of the files, and did not focus on the other element, which is what we were pressing and what we were making that was the predicate for our motion, and that's utilizing or using the files. And just as the injunction order identifies those as two separate things, they are two separate things, and our expert witness and declaration goes into great detail explaining that while it's unable to confirm presently whether the files were or not deleted as Wal-Mart represented in their declaration, it is abundantly clear using five different study mechanisms that they are continuing to utilize the trade secrets on their website. Mr. Larson, apart from the appearance of the website and examining the look and the feel of it, what's the evidence that supports that there's continued use? It is not just the look and the feel, and that's precisely what the District Court relied upon, is that somehow all that the expert was doing was giving a look and the feel. There were both quantitative as well as qualitative studies conducted, well respected in the industry, utilizing the website, looking under the hood of the website to the extent possible, and comparing these images with the trade secret files to make the conclusions that the expert did. In looking at those qualitative and quantitative studies and the statements of your expert, I was having a difficult time following from that evidence in the record how exactly that can be squared with the fact that there was a design template that Wal-Mart started with that Zucker was required to write to. I get where your argument would be that way if, in fact, the whole thing had just been created by your client, but there was already an existing website. It may be that I'm just not bright enough to read the reports and look at the data in the file, but when I looked at it, I couldn't really see where that distinction was actually being accounted for. It may be that it's just not possible to account for it without seeing the underlying script that's causing the program to run. But as I looked at it, I didn't see any evidence of that. Did I just miss something? Well, Judge Erickson, listen, I'm very much like you. I'm no computer. That's not my area. I'm a lawyer. But what I am relying upon is the expert testimony and the expert explanations. For example, the first quantitative test that he uses, the Structural Similarity Index, is a widely used method in the scientific community to compare images between a file and an existing website. You're right. There was a website beforehand. And the Zucker trade secrets and what they contributed to the website is a part of that, not the whole of it. And in order to determine whether or not elements from what Zucker contributed, which was protected and was the subject of the injunctive order, are still manifest and still present in the current website. This Structural Similarity Index test, again, widely accepted in the scientific community. And we understand that there may be arguments against that particular test, but that's why we needed an evidentiary hearing. And that's why this case needs to be remanded. The other second and third tests did the same type of thing using image comparison software tools. The Python script tool, which was the fourth test, the fourth quantitative test that was used, was also a widely accepted test to do exactly, Judge Erickson, I can't explain the details the way the expert can. But that's why we submitted the 70-some page report, which in details explains how these tests are used to determine whether or not these elements are still being utilized. And they found conclusively, conclusively that they were. Counsel, would you help me out with the citation to the language you just quoted or referenced as conclusively demonstrate the presence of the prohibited material? I would, Your Honor, and I would begin by referring the court to a joint appendix, page 199, which is page 47 of our expert's report or the declaration rather of Dr. Chuck Easton, who I'm sure the court recalls from the record was admitted as the expert in the underlying matter. And at paragraph 55, he states multiple lines of analysis, including the structural similarity index, software to compare images, a Python script, and qualitative inspection of the ASDA.com website demonstrate conclusively that the ASDA website is using the super trade secrets referenced in the injunction for thousands of product displays. And then two paragraphs down, paragraph 57, he writes, it is my expert opinion based on the thorough scientific analysis described in this declaration, along with my extensive training and experience that ASDA.com is using super trade secrets on thousands of product displays as of July 2020. And the report itself, and I can give you further pin citations to each of those five different studies that he did to demonstrate the utilization are set throughout his declaration. And it's significant that he notes that these super trade secrets are being used on thousands of product displays, because the only reference in Wellmart's declaration by their Dr. Tan, when they certified that they had destroyed all of the super files, and we're not disputing at this point that they are, because that's proving the negative. And that's what the expert said, that he can't prove the negative without having some discovery of those things. What he was able to use was the scientific studies to determine the utilization of the super trade secrets. And the only response that Wellmart had, and that was in paragraph 13 of Dr. Tan's declaration, and that is that they redesigned the website. But what they redesigned, as Dr. Eastman points out, is the landing page, not the thousands of pages describing with the product descriptions. And that's where the super trade secrets are manifest and are being utilized as of July of 2020, when he did his report. And that's the fundamental error that took place here. The court essentially adjudicated the wrong issue. And the best place to see that is just the court's order itself. And I'm reading from the addendum here on page two. This is Judge Brooks writing in his order. He said, within the amended judgment, the court granted injunctive relief relating to the lone surviving trade secret claim and ordered Wellmart to delete from its websites and code repositories 15 specifically named files. And that's where he ended. And all of his findings and all of his analysis goes to that issue of deletion, which misses entirely the issue that we brought forward, which is the issue of utilization. The second issue that he makes is manifest on the next page of his order, where, frankly, he just uses the wrong legal standard. He makes three references. He says there's no compelling justification for ordering such relief. And, of course, compelling justification is not the standard to initiate contempt proceeding. And please, I ask this court to keep in mind the stage that we were at. We were not asking for a finding of contempt. We were not at the point where we were asking for a particular remedy for contempt. We were asking the court just to initiate the proceedings that we met the prima facie showing that there is a basis to move forward. And, frankly, I think the expert report that we submitted shows that in far greater detail than you'd even normally a federal judge or federal trial court judge would expect to see at that point. Well, the district court seemed to characterize what you were seeking from him was tantamount to a fishing expedition. Is that? Yes, Your Honor. Yes, Judge Smith. He did say that it was a fishing expedition. And he said that we were, yeah, a lot of treasure hunters or something like that. Because, again, he was focused on the deletion. He seized upon language in the expert report that our expert, Dr. Easton, said, I can't determine whether or not they really did delete, as they said. So what about the expert's testimony about usage differs in substance from the appearance? I mean, of the appearance and feel of the website. Absolutely. And this appearance and feel, though, so that's not what the expert is saying. You know, it was really interesting. Judge Brooks indicated that he understood this back in the original trial. There was a motion in limine brought by Walmart to preclude Dr. Easton, the supplemental design and layout opinions. And I'm reading from the joint appendix at 3477. In a pre-trial order, the court ruled as follows. It was a very simple order. He said, the court will not permit Sukor's lawyers or witnesses to argue that the visual appearance of a website is itself a trade secret. And we don't dispute that. And that's kind of as far as he went in his order here. Back before the trial, he went on to say, the court will permit, he said, Mr. Easton, to opine on similarities in websites visual appearances. So long as those opinions are offered as circumstantial evidence of trade secret misappropriation, a limiting instruction might be appropriate. And that's precisely the extent that the appearance of the design is used in the current website using these well-accepted scientific studies to determine that they are utilizing the trade secrets. It's not just a matter of looking at it and saying, hey, that looks like, you know, the other file. I mean, there are actually, I mean, and I urge the court to actually read the studies. It's an interesting lesson in science, how these studies are able to use what it looks like, run it through quantitative analysis, and come up with a conclusion that the expert did. But again, you don't dispute the general notion that the court was relying on, which is that look and feel are not protected. No, of course not. Of course not. That's been not a dispute from the beginning, and that we would never have won the underlying trial if that's all we had. But Dr. Easton had the same thing that he was able to do in the trial that led to the injunction is what he's doing here again. And that's where it's not really this court to conduct this evidentiary hearing, and you don't have the record before you to do it, precisely because I believe Judge Brooks went down the wrong avenue. If it was just a matter of deletion, he's right. We didn't have evidence of deletion. We can't prove that negative. What we can prove is the positive, and that's the utilization. And we can use it with what tools we have, and we establish that. And what at least establishes the showing, the prima facie showing. What the court did on the standard is it cited a couple cases about this fair ground of doubt. But the fair ground of doubt principle, that's a rebuttal. All you have to do to initiate contempt proceedings is make that prima facie showing. The other side, the responding party, in this case Walmart, if they can show a quote unquote fair ground of doubt, they can then rebut that. That wasn't done here at all. What the court ended up concluding is imposing the burden that would normally be on Walmart on Sucre. On page four of its order, the court writes, Sucre believes it has now offered a fair ground of doubt as to whether Walmart has complied with the injunction. The court disagrees. Mr. Larson, you only have a minute. Mr. Larson, you only have a minute left of your time. I'm sorry. I'll reserve that time unless the court has any questions for me in this opening. All right. Thank you. Thank you. Mr. Greenstein. Your honors, may it please the court. My name is Joe Greenstein. I represent the appellee in this case, Walmart. And by Sucre's appeal in this case, Sucre is asking this court to accept a fundamental proposition. And that proposition is that the district court didn't understand the meaning of the trade secret from the trial over which it presided. And it didn't understand the scope of the injunction that the district court itself entered. There's a reason why this court's precedents grant great deference to a district court's interpretation of its own injunction order. And that is to resolve appeals exactly like this one. Thanks to the extensive litigation that's come before us, we know precisely what this Adobe source file trade secret is and what it is not. We know what it is because Sucre itself explained to the court, to the jury, to even this court, that this Adobe source file's trade secret is background computer code that lets a web programmer efficiently build web pages. And the one specific example Sucre ever gave was it's a technique that allows a programmer to make a change to one web page and it instantly propagates to a bunch of others. That's what the trade secret is. We also know what the trade secret is not. It has nothing to do with the visual design of any web page. And you don't need to take my word for it. Take Aaron Sucre's word for it, the gentleman for whom this company is named. He testified at trial, and this is Joint Appendix 3239. Question was put to him. Are these source files incorporated into the designs you provided Walmart? His answer, no, they are not. Question, are these source files necessary to use the designs you provided to Walmart? His answer, absolutely not. Those are his words, absolutely not. So the problem with Sucre's contempt motion is they presented no evidence to the district court that Walmart was actually using what this trade secret is, namely this background computer code to propagate changes to a bunch of different web pages. Instead, Dr. Easton's analysis focused entirely on what this trade secret is not. His analysis focused entirely on the visual design of these supposed pages that Sucre says it developed for Walmart. Mr. Greenstein, why would it be appropriate for a court in a situation like this to permit limited discovery to access the inner workings of the code to see if the suspect code is being used? Your Honor, the standard for opening an attempt proceeding is a high one. The Supreme Court explained in the Taggart case that civil contempt is one of the most severe remedies. This court explained in the Hartman case that civil contempt proceedings are not to be opened lightly. If you remember the context of this particular case, the context of this case was that Sucre was hired by Walmart to provide templates to Walmart that Walmart could go out and use to build up other web pages. That was what the contract was and Sucre can't and won't deny that. The evidence that Sucre has presented that says, let's go to full discovery, let's open up a contempt proceeding, is evidence that at best shows Walmart was doing exactly what the contract required of it or told it to do, which is to build up other web pages with these templates that were Walmart's property. To say, well, why don't we just open up contempt proceedings and see what Sucre can go find in a phishing expedition based on evidence that Walmart is only performing what Walmart was allowed to do under the contract would vitiate any standard at this stage. And again, I would stress the district court is in the best position to understand what this particular injunction covered. The district court understood that this injunction had nothing to do with the visual appearance of a website and yet that's all the evidence that Sucre ever presented was the visual appearance of a website compared to what Sucre claimed was a design it provided to Walmart. That's not the trade secret and so Judge Brooks certainly didn't abuse his discretion in holding otherwise. Now, why don't we talk about the prima facie case a little bit, Your Honor, which was Sucre's second argument on appeal. The question is whether or not Sucre presented sufficient evidence to establish a prima facie case that Walmart was violating the terms of the injunction. And there's two problems with that particular argument from Sucre's perspective. First of all, all of the evidence that Sucre presented to the trial court had absolutely nothing to do with the actual trade secret in this case. And second of all, even if it did, Sucre presented insufficient evidence to show Walmart was actually even using any of these supposed templates that Sucre claims it was. Let's talk about that first issue first. Well, would you address the cited portions of the affidavit of Dr. Easton where he says conclusively or essentially that he discovered what to him conclusively shows that usage is occurring. With all due respect to Dr. Easton, Dr. Easton has no idea what the trade secret is in this case. Dr. Easton's conclusive conclusion that Walmart is using the trade secrets in this case is based upon a comparison of how an image looks on the current Asda website to how an image looks from the supposed files that Sucre provided to Walmart. That is not the trade secret. So Dr. Easton can opine all day long that he has found conclusive proof that two images look like each other, but Judge Brooks could not have been clearer that image similarity has absolutely nothing to do with this trade secret. I think Dr. Easton is arguing or is presenting a case that says that if you take the appearance and you look at the sort of overlays and then you look at the code that is in fact the protected trade secret that that code could produce this. And while it is possible that there could be some other code that would produce this same appearance that the extent of the overlap makes that unlikely. So I think his opinion actually does go to the code, the source code, which is the thing that we're really talking about as the trade secret. And so the question is, do they have to have absolute smoking gun evidence just to open the proceedings? Two responses to that, Your Honor, and the overall answer is no. His opinion doesn't have anything to do with the trade secret that's issued in this case. I mean, remember Mr. Sucre's testimony to the court. Are the source files incorporated into these designs and the designs are the only thing that Dr. Easton reviews? No, they are not. Are the source files necessary to use those designs? Absolutely not. So these designs that Dr. Easton was looking at have absolutely nothing to do with the Adobe source files trade secret. And if we want further proof of that, Your Honor, Judge Erickson, we can look at your own words. We can go back and look at the 2020 opinion in the first appeal of this case. At 949 F. 3rd, 1110, Judge Erickson, you wrote that at trial, Sucre presented documents and testimony demonstrating that the Adobe source files predated its relationship with Walmart. They were not created for Walmart. In other words, the thing that is the actual trade secret in this case is some back-end computer code. It has absolutely nothing to do with the design of any particular web page. And Your Honor recognized that in the opinion from 2020, saying that if we look at it as the web design, that has absolutely nothing to do with... I know what I wrote and I know what my opinion is. I'm really just asking, why is Dr. Easton wrong? We can come at it from another perspective, Your Honor. What does Dr. Easton do? Dr. Easton takes an image that he says Sucre developed and is present in the source files. And he compares it to an image from the ASDA website and says, well, if these two images look the same, then there must have been reuse. What Dr. Easton utterly fails to grapple with is the fact that every single image that Dr. Easton uses in this comparison project is also an image that Sucre provided to Walmart in the course of this contractual relationship and which Walmart owns free and clear. Walmart, these were the deliverables, these are the templates. We presented unrebutted evidence to the district court that every single one of these images that Dr. Easton cites is an image that Walmart owns separately, quite apart from these source files. And Walmart could do anything it wants with those images. It could use them as design inspiration. It can look at the green buttons and the layout and create a billion new pages using those images. It could publish them in the Wall Street Journal. It could go out on the street and just hand them out. Those are Walmart's property. So how can Dr. Easton conclude that Walmart is somehow using Sucre's code because of the way these images look when Walmart owns these exact same images and can replicate to its heart's content those images and create new other web pages that look just like them? That's why it's important to come back to what the injunction is. The injunction required Walmart to delete these particular files and also not to use them furthermore anywhere else. But the injunction never said Walmart had to redesign any web page. It never said it had to pull down the look and the feel, that Walmart couldn't use the Sucre design elements to the extent they even were Sucre's in any future websites. That is what Sucre asked the district court to impose and the district court rejected that because the district court understood that the trade secret that it was enforcing, the trade secret that it was enjoining, had nothing to do with how a web page looks. It has everything to do with how you build up a web page, how some programmer somewhere in a back room uses some tools in order to create a web page. And there is zero evidence, zero, that Walmart ever used these particular tools. There is zero evidence that Walmart ever used Sucre's technique to, you know, create a web page and then propagate it off to millions of other places. And again, you don't have to take my word for what this particular Adobe source files trade secret is. Take Sucre's word. In the 2019 argument on this case, Sucre's appellate counsel, who is different from my colleague here today, at 15 minutes and 25 seconds into the recording, if you want to go pull the recording from the first appeal, you can hear it, told this court what this trade secret is. He said, and I quote, Adobe source files. Now those are a compilation based on years of putting things together, a library of how the web page design parts work with each other. So if I am making a web page and I have to change something over here, there's a technique and a flow through on how it impacts everything else. Close quote. That is how Sucre's own counsel explained to this court, to you Judge Erickson and to you Chief Judge Smith in that first panel, what that trade secret was. He didn't say anything about how the buttons look. He didn't say anything about using a green logo. He didn't say anything about vertical layouts or the visual appearance of any web page. He was talking about programming tools. And so evidence that suggests that Sucre's designs, which we strongly disagree with, had some design impact on the current ASDA site, is no evidence whatsoever about this Adobe source file's trade secret. And the district court recognized this. The district court had heard for years from Sucre that this sort of evidence has nothing to do with the trade secret. Now my colleague mentioned a ruling from the district court which held that the visual appearance of a website could be circumstantial evidence of trade secret misappropriation. Although the context of that order is quite important, which my colleague omitted, that order arose in the context of a dispute between Walmart and Sucre over whether Walmart had imported Sucre's designs from the UK ASDA website over to Walmart2go, the website in the United States. And Walmart's position was the Walmart2go website had never had anything to do with Sucre, had never seen the Sucre files. Sucre was not part of the U.S. website. And the district court, in that particular order, said, well, if Sucre can show that the U.S. website kind of reflects Sucre's design, then that is some evidence that maybe the U.S. web developers did have access to the trade secrets. But the court never ruled that the visual appearance of those trade secrets that was some circumstantial evidence of actual use of any trade secrets. It was all about access. And for those reasons, Your Honor, we urge an informants of the district court's order. Thank you, Mr. Greenstein. Mr. Larson? Yes, I know I only have a few seconds left here, so I'll make this brief. Yes, the programming, the Adobe source files are programming tools that do affect and impact everything else. And that is the point, and that is the trade secret. And the only mechanism that we, at this point, to confirm whether or not those Adobe source files, those programming tools, are still being utilized in the website, is to use the scientifically accepted studies or tests that Dr. Easton employed. This dispute that's going on here, and almost everything that Mr. Greenstein said, is exactly the argument that should have taken place before the district court on the issue of utilization. But the court shut us down on the deletion, accepting the representations, and there are no factual findings whatsoever related to anything that Mr. Greenstein said here. That's why he's having to resort to the trial record and the last appeal. We don't have a record here. My time is up. I wanted to address just the Walmart ownership issue, which we think is belied by the record. But my whole point is that we shouldn't be doing this. This case should be remanded for an evidence re-hearing and further proceedings. Thank you, Mr. Larson. Thank you also, Mr. Greenstein. We appreciate both counsel's presence before the court this morning in providing this argument on the issues that have been raised. We'll continue to study the materials that have been filed and briefed, and we'll endure a decision in due course. Thank you, counsel. Thank you.